UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE JAMES JONES,

        Plaintiff,

v.

SHERRY BURT, *et al.*,

        Defendants.
_____/

Case No. 1:21-cv-41

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Plaintiff Willie James Jones ("Jones") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Jones filed this prisoner civil rights lawsuit pursuant to 42 U.S.C. § 1983. At the time of the alleged incidents, Jones was incarcerated at the Muskegon Correctional Facility ("MCF"). Jones sued MDOC Director Heidi Washington, MCF Warden Sherry Burt, MCF Deputy Warden D. Stewart and MCF Shift Commanders B. Hall and S. King. The Court dismissed Director Washington. This matter is now before the Court on a motion to dismiss filed by defendants Burt, Stewart, Hall and King (ECF No. 19).

    **I.**    **Background**

The Court summarized Jones' complaint on initial screening as follows:

> Plaintiff's complaint resembles dozens of others brought by prisoners in the Western District of Michigan since the beginning of the COVID-19 pandemic. These complaints have been brought by prisoners who have been infected with – or have legitimate fears of being infected with – COVID-19 and challenge the response by the MDOC and its staff.
>
> Plaintiff alleges that Defendant Washington's policies predictably failed to prevent the spread of COVID-19. Plaintiff alleges that the screening questions for

1

>   staff were ineffective, and Defendant Washington should have required COVID-19 testing for staff before entering MDOC prisons.
>
>   Specifically at his facility, Plaintiff alleges that MCF Defendants failed to follow MDOC protocols established to reduce the risk of COVID-19 transmission within prisons.  Plaintiff alleges that on July 23, 2020, another prison became ill and went to MCF's health services. MCF health services apparently suspected the prisoner may have been COVID-19 positive because they collected a sample for a polymerase chain reaction (PCR) test. MCF personnel allegedly returned the ill prisoner to his unit pending the results of his PCR test. Until the PCR test results were reported the following day, MCF personnel permitted the ill prisoner to come into close contact with multiple other prisoners including Plaintiff. On July 24, 2020, the ill prisoner's PCR test returned positive for COVID-19. At that point, MCF staff isolated Plaintiff and tested him for COVID-19. Plaintiff's results returned positive for COVID-19 on July 28, 2020, as did results for others in Plaintiff's unit at MCF.

Opinion (ECF No. 6, PageID.68).

Jones alleged three "Issues."  In Issue I, entitled "Facts supporting the underlying claim," Jones alleged: that Warden Burt and Deputy Warden Stewart failed to follow safety protocols issued by Director Washington; that Burt and Deputy Stewart "failed to quarantine HOUSING UNIT 2 inmates to their individual cells to isolate and protect the inmates and slow the spread of the coronavirus after conformation [sic] that a posative [sic] case had recently been active among the inmates in unit 2"; that on July 23, 2020, inmate Shannon was tested for Covid-19 but not isolated until the results of the testing were completed; that Shannon tested positive on July 24, 2020; that Jones was isolated for close contact with Shannon on July 28, 2020 and tested positive that day;  and, that defendants did not confine inmates until August 3, 2020, when 180 inmates tested positive.  Compl. (ECF No. 1, PageID.4-6).

In Issue II, entitled "Defendants Sherry Burt, D. Stewart and Shift Commanders B. Hall and S. King showed deliberate indifference to the safety of myself and others by blatantly ignoring safety protocols issued by Heidi E. Washington to prevent the spread of the coronavirus within food service," Jones alleged: that on multiple occasions Warden Burt and Deputy Warden

2

Stewart personally allowed staff to seat inmates in food service "knowing that the distance between the inmates violated the social distancing protocols issued by [MDOC Director] Washington." *Id*. at PageID.13. Specifically, staff seated inmates "two to a table" (the tables normally seated four inmates), which only allowed "a distance of three and a half feet between inmates." *Id*. (emphasis omitted). Jones did not include any allegations against defendants Hall or King.

Finally, Issue III named MDOC Director Washington, which alleged that, "[W]ashington issued memorandum (30R3)-thru (30R6) instructing staff at all facilities to follow the standard guildlines [sic] issued by the center for disease control which were effective in slowing the spread of the virus in the general public but were but were extremely insufficient to protect the health and safety of inmates in an institutional setting [.]" *Id*. at PageID.15. In Issue III, Jones asked for both monetary damages and an injunction against the MDOC "mandating that all employees be subject to mandatory testing before entering all M.D.O.C. facilities until a vaccine is distributed to protect the most vulnerable inmates that are elderly with underlying medical conditions and the inmate population in general who cant [sic] protect themselves" has been dismissed. *Id*. at PageID.17 (emphasis omitted).

For his relief in this lawsuit, Jones asked for $1,000,000.00 in compensatory damages, $1,000,000.00 in punitive damages, and the injunction. *Id*. at PageID.18.

On initial screening, the Court addressed the legal standard applicable to Jones' Eighth Amendment claim:

> Plaintiff alleges that the Defendants were deliberately indifferent to his health and safety. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial

3

> of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.
>
> In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Opinion at PageID.70.

In applying this standard, the Court found that Jones failed to allege a claim against Director Washington.

> Although the Court is sympathetic to Plaintiff's general concern about the COVID-19 virus, he has failed to allege facts showing that Defendant Washington's handling of the COVID-19 crisis violated his Eighth Amendment rights. Accordingly, the Court will dismiss his Eighth Amendment claims [sic] her.

*Id*. at PageID.81.

However, the Court found that Jones stated a claim against Warden Burt, Deputy Warden Stewart, and Shift Commanders Hall and King, stating:

> On the other hand, Plaintiff's allegations against the remaining Defendants – Burt, Stewart, Hall, and King – assert that they failed to comply with MDOC policies. Therefore, on initial review, the Court concludes that Plaintiff has sufficiently alleged facts to state an Eighth Amendment claim against them.

*Id*. at PageID.82. The Court dismissed defendant Washington on May 21, 2021, and ordered service on the remaining defendants. *See* Orders (ECF Nos. 7 and 13).

    **II.**    **Defendants' motion to dismiss**

    **A.**    **Legal standard**

4

Defendants have moved to dismiss Jones' Eighth Amendment claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B. Failure to state a claim

As discussed, the Court reviewed Jones' complaint on initial screening and concluded that it stated Eighth Amendment claims against the remaining defendants. The Case Management Order (CMO) discourages defendants from raising the same issue in a motion to dismiss.

> (a) <u>Rule 12(b)(6) Motions</u>. The Court has conducted an initial review of the complaint pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant that is immune from such relief. Upon initial review, the Court concludes that the complaint is not subject to dismissal for any of the reasons listed above. In reaching this conclusion, the court has determined that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Accordingly, the Court discourages the filing of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

CMO (ECF No. 21, PageID.150). *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (the *Iqbal* plausibility standard applies when dismissing a claim under § 1915(e)(2)(B)(ii)).

When they appeared in this action, defendants did not ask the Court to reconsider the screening opinion. Rather, defendants moved to dismiss the complaint. Defendants' motion, filed pursuant to Fed. R. Civ. P. 12(b)(6), applied the same legal standard which the Court applied on initial screening, *i.e.*, whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. There is no reason for the Court to perform a second *de novo* review of allegations which it found sufficient to state a claim for relief. Accordingly, defendants' motion to dismiss should be denied to the extent it seeks dismissal for failure to state a plausible claim for relief against the remaining defendants.

    **C.**    **Qualified immunity**

The CMO explicitly allows defendants to file a motion to dismiss on the grounds of qualified immunity or sovereign immunity.

> (b) <u>Motions to Dismiss on the Ground of Qualified or Sovereign Immunity</u>. A defendant may file a motion to dismiss on the ground of qualified or sovereign immunity, only if the motion accepts all plaintiff's well-pleaded allegations as true and relies only on the complaint and attachments. If a defendant files a motion complying with this paragraph, discovery will be stayed at defendant's request. All motions raising qualified or sovereign immunity on the basis of affidavits or other documents outside the pleadings must be by motion for summary judgment.

CMO at PageID.150.

Here, the remaining defendants seek to dismiss Jones' Eighth Amendment claims on the basis of qualified immunity. Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks omitted). Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

"When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). The Sixth Circuit applies a two-tiered inquiry in reviewing the dismissal of a claim on qualified immunity. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

> The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was clearly established when the event occurred such that a reasonable officer would have known that his conduct violated it.

*Id*. (internal quotation marks omitted).

"To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright*, 839 F.3d at 518 (internal quotation marks and brackets omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any

7

reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021).

Warden Burt, Deputy Warden Stewart and Shift Commanders Hall and King assert the following grounds for qualified immunity:

Here, Plaintiff potentially asserts three unique sub-claims pertaining to events that occurred in July 2020. Plaintiff therefore has the burden to provide a case showing that that he had a clearly established constitutional right, in July 2020, that was violated by the Defendants for each sub-claim. Plaintiff cannot overcome his burden of showing that the Defendants are not entitled to qualified immunity.

First, Plaintiff claims that the first inmate at MCF to test positive for COIVD-19 was not properly isolated after being tested on July 23, 2020. (ECF No. 1, PageID.4.) Plaintiff does not allege that any of the individual Defendants made the decision to not isolate a prisoner awaiting test results. In other words, Plaintiff seeks to hold the Defendants liable on a *respondeat superior* theory of liability. Plaintiff cannot provide a case showing that prison Wardens or other supervisors are liable for the decisions of their subordinates related to COVID-19 housing placements. The Defendants are entitled to qualified immunity on this claim.

Second, Plaintiff claims that proper social distancing measures where [sic] not followed in the chow hall as two inmates were permitted to sit at one table. (ECF. 1, PageID.13.) But Plaintiff cannot point to any court that held prior to July 2020 that prison officials violated the Eighth Amendment merely by their inability to ensure social distancing could occur in every situation. Additionally, even authoritative public health guidelines acknowledge that social distancing in a correctional environment can be difficult, if not impossible, to enforce. The Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, published by the Centers for Disease Control and Prevention (CDC), recommends that prisons "[i]mplement social distancing strategies to increase the physical space between incarcerated/detained persons (ideally 6 feet between all individuals, regardless of symptoms), and to minimize mixing of individuals from different housing units. Strategies will need to be tailored to the individual space in the facility and the needs of the population and staff. Not all strategies will be feasible in all facilities."  No court has found that the inability of prison officials to ensure social distancing occurs during the COVID-19 pandemic, standing by itself, and in light of other measures that are not in dispute here such as providing masks to prisoners and setting up isolation areas for known COVID-positive prisoners, violates the Eighth Amendment. Accordingly, the Defendants are entitled to qualified immunity on Plaintiff's social distancing claim.

Finally, Plaintiff alleges that the MDOC's staff screening procedures were inadequate. (ECF No. 1, PageID.15.) Plaintiff does not allege that any of the

8

> individual Defendants are responsible for the screening procedure. In other words, like his first claim, Plaintiff seeks to hold the Defendants liable on a *respondeat superior* theory of liability. Plaintiff cannot provide a case showing that prison Wardens or other supervisors are liable for the decisions of their subordinates related to COVID-19 housing placements. The Defendants are entitled to qualified immunity on this claim.

Defendants' Brief (ECF No. 20, PageID.145-147) (footnote omitted).

Defendants are entitled to qualified immunity with respect to Issue I. As discussed, on initial screening, this Court concluded that Jones set forth a plausible claim for relief against defendants Warden Burt, Deputy Warden Stewart, Shift Commander King, or Shift Commander Hall. However, these defendants are supervisory employees, none of whom made the decision not to isolate prisoner Shannon after Shannon took a COVID-19 test. Jones cannot rely solely on the doctrine of *respondeat superior* to defeat defendants' claims of qualified immunity. As the court explained in *Harris v. City of Cleveland*, 7 Fed. Appx. 452 (6th Cir. 2001),

> [A] plaintiff must establish with particularity that a defendant *himself* has violated some clearly established statutory or constitutional right in order to strip that person of the protection of qualified immunity. A plaintiff may not, therefore, rely solely on the doctrine of respondeat superior in order to defeat a supervisor's assertion of qualified immunity. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (requiring in the context of a § 1983 action that liability of supervisory personnel be based on something more than the theory of respondeat superior); *Jones v. City of Memphis*, 586 F.2d 622, 623 (6th Cir.1978) (same).

*Harris*, 7 Fed. Appx. at 457 (emphasis in original). Accordingly, defendants Burt, Stewart, King and Hall are entitled to qualified immunity with respect to the alleged failure to isolate prisoner Shannon as alleged in Issue I.

Next, Warden Burt and Deputy Warden Stewart are entitled to qualified immunity with respect to Issue II, which alleged that Burt and Stewart "personally" allowed staff to seat inmates in food service, knowing that the distance between the inmates violated the social distancing protocols issued by Director Washington. *See* DOM 2020-30R3 (May 27, 2020)

9

(effective "Immediately") (ECF No. 1-1, PageID.31-39). This DOM directed facilities to engage in a number of COVID-19 protocols which included, among other things: the use of personal protective equipment by all staff and prisoners (except while eating or showering); screening of all individuals before entering a facility or office building; use of isolation areas; placing prisoners who test positive for COVID-19 "in quarantine in a designated isolation area as soon as resources permit regardless of their security level or prior criminal history;" protocols regarding prisoners under investigation for COVID-19, *e.g.*, "[s]eparate isolation areas shall also be developed for prisoners who are under investigation (PUIs) for having COVID-19 as well as for those who have had close contact with a PUI or known-positive COVID-19 individual (Close Contacts), as necessary"; securing the property "of prisoners with confirmed COVID-19 as well as PUIs and Close Contacts if the prisoner is placed in an isolation area" to control the spread of COVID-19 that may be lying dormant; and, various restrictions to large gatherings, prisoner transfers, and cell moves. *Id*.

In addition, the DOM directed that

> [S]ocial distancing recommendations shall be followed at all times, including programing, classrooms, chow lines, staff screenings, office buildings, etc. This means that there shall be a distance of at least six feet between all individuals. Staff meetings and other group interactions of 10 or more individuals shall be limited. Technology must be used in place of group interactions, when possible.

*Id*. at PageID.32.

Finally, the DOM stated that with respect to food service,

> The Business Manager shall ensure extra food is ordered (14 days on hand). The number of prisoners allowed to attend a meal at one time shall be reduced as determined by the Warden. Prisoners eating in the dining hall shall be seated in a fashion that allows them to avoid close contact with each other (i.e., six feet apart) and tables shall be sanitized between use. Prisoners shall stand at least six feet apart while waiting in line to receive their meal.
> .

*Id*. at PageID.36.[1]

These protocols had been in place at MCF for about two months before Jones tested positive for COVID-19 on July 28, 2020. The present lawsuit involves one protocol which was allegedly violated, *i.e.*, Warden Burt and Deputy Warden Stewart failed to follow the six-foot social distance protocol in the dining room by "personally" allowing staff to place two prisoners at each table. Jones has not provided any authority for the proposition that prior to July 28, 2020, it was clearly established law and beyond debate that a prison employee violated the Eighth Amendment by seating two inmates at a four-person dining hall table, which resulted in less than six feet of social distancing between the two inmates. Jones has failed to meet his burden to show that defendants are not entitled to qualified immunity. Accordingly, defendants' motion to dismiss Issue II should be granted on the basis of qualified immunity.

Finally, Jones' claim regarding inadequate staff screening procedures alleged in Issue III, including his request for an injunction, is not before the Court. Issue III was directed against defendant Director Washington. As discussed, Washington was dismissed on initial screening and is no longer a defendant in this lawsuit.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (ECF No. 19) be **GRANTED** on the basis of qualified immunity.

Dated: July 15, 2022 /s/ Ray Kent
RAY KENT
United States Magistrate Judge

---

[1] In this regard, defendants' counsel represented that MCF has a population of approximately 1,300 inmates. Defendants' Brief (ECF No. 20, PageID.135).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).